971 F.2d 591
 59 Fair Empl.Prac.Cas. (BNA) 833,
59 Empl. Prac. Dec. P 41,643, 61 USLW 2175,
1 Wage & Hour Cas.2d (BNA) 41
 Robert L. GRAY; Paul W. Babcock; Robert N. Cardwell;
Kenneth P. Davis; Melvin P. DeWeese; Gene E. Eastham;
Fred M. Graham, Jr.; Stanley M. Hachinsky; Marvin R.
Harbour; Roy E. Hauk; Robert P. Jones; Chester M.
Martinson; Patrick C. McNellis; Elmer A. Nilges; W.E.
Pickert; Charles Powell; Joseph R. Stanley; Robert E.
Walsh; Dennis R. Worthington; and Joseph S. Ogle,
Plaintiffs-Appellees,
v.
PHILLIPS PETROLEUM COMPANY, Defendant-Appellant.
James L. ANSON; Leonard P. Belan; Robert E. Brooks;
Alfred E. Dyer; Richard W. Jackson; Clyde Lewis; William
E. Neustaedter; Elmer J. Rome; Clarence J. Zuger; and
Bobby S. Dysart, Plaintiffs-Appellees,
v.
PHILLIPS PETROLEUM COMPANY, Defendant-Appellant.
 Nos. 91-3145, 91-3146.
 United States Court of Appeals,
Tenth Circuit.
 July 30, 1992.
 
 David J. Waxse (Elinor P. Schroeder and Barbara A. Harmon of Shook, Hardy & Bacon, Overland Park, Kan., and Donald S. Zimmerman of Phillips Petroleum Company, Bartlesville, Okl., with him on the brief), for defendant-appellant.
 John H. Fields of Carson & Fields, Kansas City, Kan. (Blaise R. Plummer, Overland Park, Kan., with him on the brief), for plaintiffs-appellees.
 Before BALDOCK and BARRETT, Circuit Judges, and PARKER, District Judge.*
 BALDOCK, Circuit Judge.
 
 
 1
 The Age Discrimination in Employment Act (ADEA), Pub.L. No. 90-202, 81 Stat. 602 (1967) (codified as amended at 29 U.S.C. §§ 621-634), creates a private cause of action for persons who are discriminated against in employment because of their age. 29 U.S.C. § 626(c). See also id. § 623. Congress has provided that enforcement of the ADEA shall be in accordance with certain provisions of the Fair Labor Standards Act of 1938 (FSLA), ch. 676, 52 Stat. 1060 (codified as amended at 29 U.S.C. §§ 201-219). 29 U.S.C. § 626(b). Among the FSLA provisions applicable to the ADEA is that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." Id. § 216(b). See also id. § 626(b). At issue is whether "a reasonable attorney's fee ... and costs of the action" includes expert witness fees incurred by a plaintiff in an ADEA suit.
 
 
 2
 Plaintiffs filed the present lawsuits alleging that Defendant violated the ADEA by discriminating in employment transfer decisions against Plaintiffs because of their age. The district court's denial of Defendant's motion for summary judgment was affirmed on an interlocutory appeal. Gray v. Phillips Petroleum Co., 858 F.2d 610 (10th Cir.1988). Thereafter, Plaintiff's obtained a favorable settlement.[1] As part of the settlement agreement, Defendant agreed to pay a certain amount to Plaintiffs for attorney's fees. Defendant also agreed that Plaintiffs "may file an application for costs and any additional attorney's fees with the District Court," but Defendant expressly reserved "any rights it has to object to the amounts or items requested in said application...." Appellant's App. at 124. Plaintiffs subsequently submitted an "Application for Determination and Award of Costs" to the district court requesting that Defendant pay $68,861 of which $68,009 was for expert witness fees. Appellees' Supp.App. at 1. In opposing the application, Defendant recognized that there was authority in this Circuit for the proposition that "a prevailing party in an age discrimination case may be awarded expert witness fees exceeding the $30 per day limit set forth in 28 U.S.C. § 1821,"[2] but noted that the issue of whether an attorney's fee award under 42 U.S.C. § 1988 could include compensation for expert witnesses in excess of § 1821's limit was pending before the Supreme Court. Defendant argued that awarding any costs (not merely the expert witness fees) would result in a "windfall" to Plaintiffs and contravened the intent of the settlement agreement.[3] The district court held that the costs, including the expert witness fees, were recoverable under 29 U.S.C. § 626(b), and, rejecting Defendant's arguments, awarded Plaintiffs the full amount of requested costs. Gray v. Phillips Petroleum Co., 758 F.Supp. 673, 675-76 (D.Kan.1991). On appeal, Defendant argues that the ADEA does not provide for the recovery of expert witness fees as part of attorney's fees and costs.
 
 
 3
 The general costs statute permits a district court to "tax as costs ... [f]ees ... for witnesses...." 28 U.S.C. § 1920. However, such fees are limited to $40 per day for each day of attendance and related travel,[4] id. § 1821(b), plus expenses. Id. §§ 1821(c-d). This Circuit has long recognized that additional expert witness fees are not recoverable under § 1920. See Ramos v. Lamm, 713 F.2d 546, 559 (10th Cir.1983); Cleverock Energy Corp. v. Trepel, 609 F.2d 1358, 1363 (10th Cir.1979), cert. denied, 446 U.S. 909, 100 S.Ct. 1836, 64 L.Ed.2d 261 (1980); Euler v. Waller, 295 F.2d 765, 766 (10th Cir.1961).
 
 
 4
 Nonetheless, in Ramos, we stated that "out-of-pocket costs not normally absorbed as part of law firm overhead may be reimbursed under 42 U.S.C. § 1988," the civil rights attorney fee shifting statute.[5] 713 F.2d at 559. Because "fees and costs of expert witnesses hired in a case are not normally absorbed as overhead in private firm litigation," we held that "if the district court concludes that expert testimony was reasonably necessary, it may reimburse reasonable expert witness fees under § 1988." Id. (citations omitted).
 
 
 5
 In Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987), the Supreme Court held that "when a prevailing party seeks reimbursement for fees paid to its own expert witnesses, a federal court is bound by the limit of [28 U.S.C.] § 1821, absent contract or explicit statutory authority to the contrary." Id. at 439, 107 S.Ct. at 2496. See also id. at 445, 107 S.Ct. at 2499. The Court rejected the argument that Fed.R.Civ.P. 54(d), which provides that, absent a statute or rule to the contrary, "costs shall be allowed to the prevailing party unless the court otherwise directs," provided an independent basis for the discretionary award of expert witness fees exceeding § 1821's limit. 482 U.S. at 441, 107 S.Ct. at 2497. While the Court did not have occasion to consider whether expert witness fees were recoverable under attorney fee shifting statutes, the Court broadly reasoned that "Congress has made its intent plain in its detailed treatment of witness fees. We will not lightly infer that Congress has repealed §§ 1920 and 1821, either through Rule 54(d) or any other provision not referring explicitly to witness fees." Id. at 444-45, 107 S.Ct. at 2499 (emphasis added). But see id. at 445, 107 S.Ct. at 2499 (Blackmun, J., concurring) ("Court's opinion ... does not reach the question whether, under 42 U.S.C. § 1988, a district court may award fees for an expert witness"); id. at 446, 107 S.Ct. at 2500 (Marshall, J., dissenting) ("I do not understand today's decision to decide the question whether a district court may award expert witness fees under 42 U.S.C. § 1988").
 
 
 6
 Notwithstanding Crawford Fitting's broad language mandating an explicit statutory reference to witness fees to override the limitations provided by §§ 1920 and 1821, we subsequently recognized that "in the appropriate case, expert witness fees may be reimbursed as part of an attorney's fees award...." Furr v. AT & T Technologies, Inc., 824 F.2d 1537, 1550 (10th Cir.1987) (citing Ramos, 713 F.2d at 559). Although we cited Ramos for this proposition, we did not determine whether the ADEA case before us was an "appropriate case" for the award of expert witness fees in light of our holding that such fees were not proper because the district court had awarded attorney's fees in accordance with parties' stipulation.[6] Id. In the present case, this was the state of the law at the time the district court awarded Plaintiffs expert witness fees.[7]
 
 
 7
 Subsequently, the Supreme Court held that " § 1988 conveys no authority to shift expert fees." West Virginia Univ. Hosps., Inc. v. Casey, --- U.S. ----, ----, 111 S.Ct. 1138, 1148, 113 L.Ed.2d 68 (1991). The Court, pointing to number of federal statutes expressly providing for the shifting of expert witness fees, reasoned that "attorney's fees and expert fees are distinct items of expense." Id. at ---- - ----, 111 S.Ct. at 1141-43. The Court rejected the argument that at the time of § 1988's enactment, judicial usage of "attorney's fees" included expert witness fees. Id. at ---- - ----, 111 S.Ct. at 1143-46. The Court also refused to expand the plain language of § 1988 notwithstanding statements in the legislative history to the effect that "the judicial remedy [must be] full and complete," H.R.Rep. No. 1558, 94th Cong., 2d Sess. 1 (1976), and that "[c]itizens must have the opportunity to recover what it costs them to vindicate [civil] rights in court." S.Rep. No. 1011, 94th Cong., 2d Sess., 2, reprinted in 1976 U.S.C.C.A.N. 5908, 5910. See Casey, --- U.S. at ---- - ----, 111 S.Ct. at 1146-47. The Court reasoned:
 
 
 8
 The best evidence of that purpose is the statutory text adopted by both Houses of Congress and submitted to the President. Where that contains a phrase that is unambiguous--that has a clearly accepted meaning in both legislative and judicial practice--we do not permit it to be expanded or contracted by the statements of individual legislators or committees during the course of the enactment process.
 
 
 9
 Id. at ----, 111 S.Ct. at 1147 (citation omitted). In so reasoning, the Court reaffirmed Crawford Fitting's requirement of "explicit statutory authority" in order to award expert witness fees to a prevailing party. Id. at ----, 111 S.Ct. at 1141.
 
 
 10
 Like the statute at issue in Casey, 29 U.S.C. § 216(b), incorporated by reference into the ADEA, id. § 626(b), does not provide "explicit statutory authority" to award expert witness fees to Plaintiffs. The statute provides solely for the shifting of a "reasonable attorney's fee ... and costs of the action." Id. § 216(b). Casey tells us that a "reasonable attorney's fee" does not include an expert witness fee. Moreover, "costs of the action" are specifically defined in 28 U.S.C. § 1920, and do not include expert witness fees unless the expert is appointed by the court. 28 U.S.C. § 1920(6). See also Casey, --- U.S. at ---- n. 3, 111 S.Ct. at 1141 n. 3 (rejecting claim that "costs" allowable under § 1988 could include expert witness fees).
 
 
 11
 Plaintiffs contend that "costs of the action" under 29 U.S.C. § 216(b) should be interpreted to mean expenses, including expert witness fees, and not be defined by 28 U.S.C. § 1920. Although this same argument was expressly rejected by the Casey Court in interpreting § 1988, --- U.S. at ---- n. 3, 111 S.Ct. at 1141 n. 3, Plaintiffs attempt to distinguish § 1988 from § 216(b) by arguing that § 1988 provides that a district court may award "a reasonable attorney's fee as part of the costs," whereas § 216(b) provides that a district court may award "a reasonable attorney's fee ... and costs of the action." Because § 1920 already permits the court to award costs as defined in that statute, Plaintiffs argue that to limit § 216(b) "costs" to those defined in § 1920 would render § 216(b) "costs" superfluous.
 
 
 12
 While we are reluctant to read redundancy into a federal statutory scheme, we are bound by the Supreme Court's pronouncement that the limit on witness fees provided in 28 U.S.C. § 1821 can be lifted only when there is "plain evidence of congressional intent to supersede" §§ 1920 and 1821. Crawford Fitting, 482 U.S. at 445, 107 S.Ct. at 2499. Plaintiffs direct us to no authority or legislative history to support their claim. See Glenn v. General Motors Corp., 841 F.2d 1567, 1575 (11th Cir.) ("nothing in the legislative history associated with Section 216(b)'s passage suggests that Congress intended the term "costs of the action" to differ from those costs as now enumerated in 28 U.S.C.A. § 1920"), cert. denied, 488 U.S. 948, 109 S.Ct. 378, 102 L.Ed.2d 367 (1988). At best, Plaintiff's argument creates an ambiguity which is insufficient to provide the explicit statutory authority or evidence of Congressional intent necessary to award expert witness fees.
 
 
 13
 Plaintiffs argue that Casey should not be applied retroactively to this case. Initially, we are not so convinced that under the law in effect at the time of the district court's order, Plaintiffs were entitled to expert witness fees. Crawford Fitting, decided prior to the district court's opinion, required explicit statutory authority for the award of expert witness fees, and nowhere in the ADEA or the incorporated provisions of the FSLA, are expert witness fees expressly referenced. See Leroy, 831 F.2d at 584 (Crawford Fitting Court's "general reasoning" left court "no room" to construe Voting Rights Act provision for "reasonable attorney's fee as part of the costs" to provide for award of expert witness fees). Nonetheless, given our post-Crawford Fitting recognition that expert witness fees may be appropriate, and our citation to Ramos for this proposition, Furr, 824 F.2d at 1550, as well as the parties' agreement that Casey changed the law in this Circuit regarding the award of expert witness fees under attorney fee shifting statutes, we will assume for the sake of argument that Casey effectively changed the law in this Circuit as to whether expert witness fees may be awarded as part of an attorney's fee award.
 
 
 14
 Both parties contend that the three-part test set forth in Chevron Oil Co. v. Huson, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), should be applied to determine whether we should apply Casey retroactively.[8] While more recent Supreme Court decisions have called this test into doubt,[9] we need not determine the continued validity of Chevron Oil in light of the Supreme Court's recent decision in James B. Beam Distilling Co. v. Georgia, --- U.S. ----, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991) ("Jim Beam"). In Jim Beam, six members of the Court agreed that a new rule of civil law should be applied retroactively in all cases when the rule was applied to the litigants in the case in which the rule developed. Id. at ----, 111 S.Ct. at 2448 (plurality opinion); id. at ---- - ----, 111 S.Ct. at 2448-49 (White, J., concurring); id. at ---- - ----, 111 S.Ct. at 2449-50 (Blackmun, J., concurring); id. at ---- - ----, 111 S.Ct. at 2450-51 (Scalia, J., concurring). While Jim Beam is clearly fractured, resulting in five separate opinions, with no single opinion commanding more than three votes, we have recognized the plurality opinion as controlling. See Anixter v. Home-Stake Prod. Co., 947 F.2d 897, 899 (10th Cir.1991), vacated on other grounds sub nom. Dennler v. Trippet, --- U.S. ----, 112 S.Ct. 1658, 118 L.Ed.2d 382 (1992). Accord Welch v. Cadre Capital, 946 F.2d 185, 186 (2d Cir.1991); Boudreau v. Deloitte, Haskins & Sells, 942 F.2d 497, 498 (8th Cir.1991) (per curiam).
 
 
 15
 In Casey, the Supreme Court affirmed the Third Circuit's denial of expert witness fees in excess of the limit set forth in 28 U.S.C. § 1821(b), and clearly rejected the proposition that such fees could be recovered as part of an attorney's fee award under a fee shifting statute absent express statutory authorization. The Casey Court never reached the retroactivity issue, and in so doing clearly applied the announced rule to the litigants in that case. Similarly, shortly after the Court announced its Casey decision, the Court vacated the Seventh Circuit's decision in Friedrich v. City of Chicago, 888 F.2d 511 (7th Cir.1989), which had awarded expert witness fees as part of an attorney's fee award pursuant to 42 U.S.C. § 1988 in excess of the limit provided by 28 U.S.C. § 1821(b), and remanded the case for further consideration in light of Casey. See City of Chicago v. Friedrich, --- U.S. ----, 111 S.Ct. 1383, 113 L.Ed.2d 440 (1991). We read these developments, in light of the rule announced in Jim Beam, as requiring us to give Casey retroactive application in this case. Because Casey clearly proscribes an award of expert witness fees as part of an attorney's fee award under a fee-shifting statute absent an express statement in the fee-shifting statute that expert witness fees may be awarded, and nothing in 29 U.S.C. § 216(b), which has been incorporated into the ADEA, 29 U.S.C. § 626(b), provides for an award of expert witness fees, the award of expert witness fees in this case was improper.[10]
 
 
 16
 Finally, Plaintiffs argue that even if expert witness fees are not recoverable under 29 U.S.C. §§ 216(b), 626(b), such fees were properly awarded in accordance with the terms of the settlement agreement. The Supreme Court recognized in Crawford Fitting that expert witness fees may be shifted by contract. 482 U.S. at 445, 107 S.Ct. at 2499 ("absent explicit statutory or contractual authorization for the taxation of the expenses of a litigant's witness as costs, federal courts are bound by the limitations set out in 28 U.S.C. § 1821 and § 1920") (emphasis added). However, the authorization to shift the expert witness fees in the settlement agreement is no more explicit than that of the statute under which Plaintiffs sought to recover the fees. The settlement agreement provided that Plaintiffs "may file an application for costs and any additional attorney's fees with the District Court." The settlement agreement contains no express authorization for the recovery of expert witness fees. Plaintiffs argue that "costs and any additional attorney's fees" was understood by the parties to encompass expert witness fees in accordance with the law at the time of the settlement agreement. As we stated earlier, it is not clear this was the law given that the Supreme Court had already decided Crawford Fitting and several circuits had extended its reasoning to attorney fee-shifting statutes. See supra note 6. While we recognize that it may be appropriate to interpret a contract in accordance with the law existing at the time the contract was entered into in order to give effect to the parties' intent, given that the law at the time of the settlement was anything but settled, we will not read a term into the settlement agreement that the Supreme Court has indicated must be explicit.[11]
 
 
 17
 The district court's order awarding Plaintiffs $68,009 in expert witness fees is REVERSED and the case is REMANDED for proceedings consistent with this opinion.
 
 
 
 *
 The Honorable James A. Parker, United States District Judge, District of New Mexico, sitting by designation
 
 
 [1]
 It is undisputed that Plaintiffs are the prevailing party and are therefore entitled to "a reasonable attorney's fee ... and costs of the action." See 29 U.S.C. §§ 216(b), 626(b)
 
 
 [2]
 See infra note 4
 
 
 [3]
 While Defendant did not press the legal argument in the district court that it now asserts--i.e., that expert witness fees are not recoverable under the ADEA--it did raise in a footnote that the issue of whether expert witness fees were recoverable under the civil rights attorneys fee shifting statute, 42 U.S.C. § 1988, was pending before the Supreme Court. Generally, when a party concedes a legal issue in the district court, we will not review the issue on appeal. See Petrini v. Howard, 918 F.2d 1482, 1483 n. 4 (10th Cir.1990) (per curiam); Pell v. Azar Nut Co., 711 F.2d 949, 950 (10th Cir.1983). However, an intervening change in the law permits appellate review of an issue to which a party did not object below. See Furr v. AT & T Technologies, Inc., 824 F.2d 1537, 1546 n. 6 (10th Cir.1987) (defendant's submission of jury instruction did not preclude defendant from challenging instruction on appeal where intervening Supreme Court decision stated rule contrary to controlling law of Circuit). Moreover, we will relax the waiver rule when "the issues involved are questions of law, the proper resolution of which are beyond reasonable doubt, and the failure to address the issues would result in a miscarriage of justice." Petrini, 918 F.2d at 1483 n. 4 (citing Stahmann Farms, Inc. v. United States, 624 F.2d 958, 961 (10th Cir.1980)). While we are not convinced that our failure to address the issue in this appeal would result in a "miscarriage of justice," the issue raised by Defendant is purely a question of law which both parties agree has been affected by the intervening Supreme Court opinion. Under these circumstances, and given that Defendant at least brought the issue to the attention of the district court, we believe that our review is proper
 
 
 [4]
 The witness attendance fee provided for in 28 U.S.C. § 1821(b) was increased from $30 per day to $40 per day in 1990. See Civil Justice Reform Act of 1990, Pub.L. No. 101-650, § 314(a), 104 Stat. 5089, 5115
 
 
 [5]
 When Ramos was decided, § 1988 provided that "the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs." Section 1988 was amended in 1991 to expressly provide for the inclusion of "expert fees as part of the attorney's fee." See Civil Rights Act of 1991, Pub.L. No. 102-166, § 113, 105 Stat. 1071, 1079 (codified at 42 U.S.C. § 1988(c))
 
 
 [6]
 Several Circuits interpreted Crawford Fitting's broad mandate as prohibiting the recovery of expert witness fees under attorney fee shifting statutes. See West Virginia Univ. Hosps., Inc. v. Casey, 885 F.2d 11, 34 (3d Cir.1989), aff'd, --- U.S. ----, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991); Denny v. Westfield State College, 880 F.2d 1465, 1469 (1st Cir.1989); Glenn v. General Motors Corp., 841 F.2d 1567, 1574-75 (11th Cir.), cert. denied, 488 U.S. 948, 109 S.Ct. 378, 102 L.Ed.2d 367 (1988); Leroy v. City of Houston, 831 F.2d 576, 584 (5th Cir.1987), cert. denied, 486 U.S. 1008, 108 S.Ct. 1735, 100 L.Ed.2d 199 (1988). But see Friedrich v. City of Chicago, 888 F.2d 511, 519 (7th Cir.1989) (Crawford Fitting does not limit award of expert witness fees under § 1988), vacated, --- U.S. ----, 111 S.Ct. 1383, 113 L.Ed.2d 440 (1991); Sapanajin v. Gunter, 857 F.2d 463, 465 (8th Cir.1988) (same). We subsequently relied on Crawford Fitting and refused to extend Ramos ' reasoning to allow for the recovery of expert witness fees under § 4 of the Clayton Act, 15 U.S.C. § 15 which provides for the recover of "the cost of the suit, including a reasonable attorney's fee." Reazin v. Blue Cross & Blue Shield, 899 F.2d 951, 981-82 (10th Cir.), cert. denied, --- U.S. ----, 110 S.Ct. 3241, 111 L.Ed.2d 752 (1990)
 
 
 [7]
 In finding that expert witness fees were recoverable under 29 U.S.C. § 216(b), as incorporated into the ADEA, id. § 626(b), the district court relied on Johns v. Whirlpool Corp., No. 86-2003, 1988 WL 120701, 1988 U.S. Dist. LEXIS 1454 (D.Kan. Feb. 4, 1988), an unpublished district court order in which the court, relying on Furr, held that expert witness fees were recoverable as part of the attorney fee award in an ADEA suit. Id
 
 
 [8]
 The Chevron Oil test for judicial retroactivity is as follows:
 First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed. Second, ... we must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation. Finally, we [must] weig[h] the inequity imposed by retroactive application, for where a decision ... could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the injustice or hardship by a holding of nonretroactivity.
 404 U.S. at 106-07, 92 S.Ct. at 355 (citations and internal quotations omitted).
 
 
 [9]
 In American Trucking Ass'ns, Inc. v. Smith, 496 U.S. 167, 110 S.Ct. 2323, 110 L.Ed.2d 148 (1990), a four-Justice plurality recognized that "retroactivity of decisions in the civil context 'continues to be governed by the standard announced in [Chevron Oil ]." Id. at 178, 110 S.Ct. at 2331 (plurality opinion) (quoting Griffith v. Kentucky, 479 U.S. 314, 322 n. 8, 107 S.Ct. 708, 712 n. 8, 93 L.Ed.2d 649 (1987)). However, five Justices in American Trucking expressed their disagreement with the plurality's application of the Chevron Oil test to determine the retroactive application of judicial decisions in the civil context. Although Justice Scalia concurred in the judgment because of his belief that the decision which was not being applied retroactively was wrongly decided, his position on the retroactivity of judicial decisions is fundamentally at odds with the plurality's. According to Justice Scalia, "prospective decisionmaking is incompatible with the judicial role, which is to say what the law is, not to prescribe what it shall be." Id. 496 U.S. at 201, 110 S.Ct. at 2343 (Scalia, J., concurring). Four dissenters shared a position similar to Justice Scalia's and thought the court should follow the rule announced in Griffith v. Kentucky, 479 U.S. 314, 322-23, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), that newly declared judicial interpretations should be applied to cases pending on direct review. American Trucking, 496 U.S. at 213-14, 110 S.Ct. at 2349-50 (Stevens, J., dissenting). Although Griffith was a criminal case, the dissent argued that "[t]he Court has no more constitutional authority in civil cases than in criminal cases to disregard current law or to treat similarly situated litigants differently." Id. at 214, 110 S.Ct. at 2350 (Stevens, J., dissenting). Disagreeing with the plurality's treatment of the Chevron Oil analysis, the dissent contended that Chevron Oil "establish[ed] a remedial principle for the exercise of equitable discretion by federal courts and not, as the plurality states, a choice of law principle applicable to all cases on direct review." Id. at 219-20, 110 S.Ct. at 2353 (Stevens, J., dissenting). Notwithstanding the disagreement expressed by five members of the Supreme Court concerning the continued vitality of the Chevron Oil test, we have continued to apply Chevron Oil in subsequent cases. See Pfeiffer v. Hartford Fire Ins. Co., 929 F.2d 1484, 1494-95 (10th Cir.1991); G.J.B. & Assocs., Inc. v. Singleton, 913 F.2d 824 (10th Cir.1990)
 
 
 [10]
 In 1991, Congress amended 42 U.S.C. § 1988, expressly providing for the award of expert witness fees. See Civil Rights Act of 1991, Pub.L. No. 102-166, § 113, 105 Stat. 1071, 1079 (codified at 42 U.S.C. § 1988(c)). At this court's request, the parties subsequently briefed the issue of the effect of this amendment to the present case. The amendment does not directly affect this case as Plaintiffs were awarded expert witness fees under 29 U.S.C. §§ 216(b), 626(b), not 42 U.S.C. § 1988. While the amendment might affect the issue of whether Casey should be applied retroactively under the Chevron Oil analysis, see supra note 8, given our holding that Jim Beam is dispositive on the judicial retroactivity issue, the 1991 amendment to 42 U.S.C. § 1988 has no effect on this case
 
 
 [11]
 Although the district court rejected Defendant's argument that it intended the settlement agreement to cover all of its liabilities to Plaintiffs, Gray, 758 F.Supp. at 675, we do not read the district court's order as basing the award of expert witness fees on the terms of the settlement agreement. Rather, the district court clearly based the award on its perceived statutory authority. See id. ("the court finds that the costs sought in plaintiffs' application are recoverable under 29 U.S.C. § 626(b), which incorporates 29 U.S.C. § 216(b)")